IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRED HARALSON, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | NO. 3-05-CV-2513-BD |
| VS. | § | |
| | § | (Consolidated With |
| STATE FARM MUTUAL AUTOMOBILE | § | No. 3-06-CV-1075-BD) |
| INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed a renewed motion for judgment as a matter of law or, in the alternative, motion for judgment in this civil action brought by its insured, Virginia Haralson, seeking underinsured motorist ("UIM") benefits under a standard Texas personal automobile policy. For the reasons stated herein, the motion is granted in part and denied in part.

I.

On March 6, 2005, Fred Haralson sustained serious bodily injuries when the car he was driving collided with a vehicle that ran a red light. (Jt. PTO at 6 & 11, ¶ 3). His wife, Virginia, and daughter, Christina, were following behind in another car and witnessed the collision. (*Id.* at 11, ¶ 5). As a result of her contemporaneous observance of the accident and seeing her injured husband trapped inside his wrecked car, Virginia suffered extreme emotional distress manifested by a variety of physical symptoms, including headaches, migraines, stomachaches, nausea, and sleeplessness. (*See* Def. Mot. at 4; Plf. Resp. at 1-2).

Following the accident, the Haralsons settled their claims against the driver of the other car, Carmen Andrade-Silva, who had liability coverage in the amount of $20,048 per person or $40,048 per incident. (*See* Jt. PTO at 11, ¶ 10). Fred Haralson accepted the per person policy limit of $20,048. (*Id.* at 11, ¶ 12). Virginia and Christina jointly settled their claims against Andrade-Silva for $18,000. (*Id.*). The Haralsons then filed a claim for UIM benefits under their policy with State Farm. The relevant portion of the policy provides:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person caused by an accident.

(Def. Mot. App. at 28). It is undisputed that the Haralsons are "covered persons" and that the State Farm policy provides UIM coverage in the amount of $50,000 per person or $100,000 per accident. (*See* Jt. PTO at 11, ¶ 13). Although State Farm tendered the $50,000 per person policy limit to Fred Haralson,[1] it refused to pay Virginia because, *inter alia*, she did not sustain a "bodily injury . . . caused by [the] accident." (*See id.* at 7 & 12, ¶ 15).

Unable to resolve their claims through negotiation, the Haralsons filed separate lawsuits against State Farm in state district court. State Farm timely removed both cases to federal court, where they were consolidated into one action.[2] In their most recent complaint, the Haralsons assert claims for breach of contract and violations of the Texas Insurance Code. (*See* F. Haralson Third

---

[1] Fred refused to accept the original settlement check tendered by State Farm because it was made payable to "Robert Fred Haralson and Virginia Haralson, Individually and as Husband and Wife, & Law Offices of Van Shaw, Their Attorney." (*See* Jt. PTO at 12, ¶ 16). Although State Farm subsequently reissued a $50,000 check to Fred and his attorney, that check also was rejected, ostensibly because State Farm waited nearly 10 months before reissuing the check in proper form. (*See id.* at 7 & 12, ¶¶ 18-21). That delay is the subject of Fred's claims for breach of contract and violations of the Texas Insurance Code. (*Id.*).

[2] Federal subject matter jurisdiction is proper because the Haralsons and State Farm are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

Am. Compl. at 3, ¶¶ 4.1-4.2; V. Haralson Sec. Am. Compl. at 2-3, ¶¶ 4.1-4.2).[3] Because an insurer's contractual obligation to pay UIM benefits does not arise until liability and damages are determined, *see Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818-19 (Tex. 2006), the court ordered separate trials--one trial on liability and damages and, if necessary, a second trial on the Haralsons' contract and extracontractual claims. Prior to the first trial, State Farm stipulated that the underinsured driver, Andrade-Silva, was liable for the accident and that Fred Haralson incurred medical expenses in excess of $100,000. (*See* Jt. PTO at 11, ¶¶ 8-9). The issues of whether Virginia sustained damages because of "bodily injury" and, if so, the amount of those damages were tried to a jury on October 9-10, 2007. After hearing the evidence, the jury found that Virginia sustained a "bodily injury" as a result of witnessing the automobile accident involving her husband and awarded $25,000 in compensatory damages, $15,000 for loss of consortium, and $1,000 for loss of household services.

State Farm now moves for judgment as a matter of law on the grounds that: (1) Virginia did not suffer a "bodily injury" as required by the policy; (2) the evidence is legally insufficient to support a claim for bystander damages; (3) loss of household services and loss of consortium are not "bodily injuries" as a matter of law; and (4) any recovery should be offset by the amount of money available from the underinsured driver. The motion has been fully briefed by the parties and is ripe for determination.

---

[3] Section 541.003 of the Texas Insurance Code provides:

> A person may not engage in this state in a trade practice that is defined in this chapter as or determined under this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

TEX. INS. CODE ANN. § 541.003 (Vernon 2008). One of the unfair or deceptive acts or practices prohibited by the statute is "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." *Id.* § 541.060(a)(2)(A).

## II.

Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cano v. Bexar Co.*, No. 07-50921, 2008 WL 2329203 at *1 (5th Cir. Jun. 4, 2008), *quoting* FED. R. CIV. P. 50(a)(1); *see also Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994). The court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Cano*, 2008 WL 2329203 at *1, *quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). A Rule 50 motion should be granted only if "the facts and inferences point so strongly and overwhelmingly in favor of the defendant[ ] that reasonable jurors could not have arrived at the verdict reached in this case[.]" *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995), *citing Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1285 (5th Cir.), *cert. denied*, 113 S.Ct. 187 (1992).

### A.

As a preliminary matter, Virginia contends that State Farm has failed to meet the procedural requirements for bringing a renewed motion for judgment as a matter of law. Under the federal rules:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

FED. R. CIV. P. 50(b); *see also Giles v. General Electric Co.*, 245 F.3d 474, 481 (5th Cir. 2001). Although State Farm made an oral motion for judgment as a matter of law at the close of the evidence, Virginia argues that the motion was procedurally deficient because it was not made in

written form. However, there is no requirement that a Rule 50(a) motion be reduced to writing. The only requirement is that the moving party provide the court with a sufficient basis for ruling on the grounds raised in the motion. *See, e.g. Tharling v. City of Port Lavaca*, 329 F.3d 422, 426 & n.4 (5th Cir. 2003) (oral motion for judgment as a matter of law held sufficient); *see also* FED. R. CIV. P. 7(b) (motion must be in writing "unless made during a hearing or trial").

Virginia further contends, without citation to the record, that State Farm asserts grounds in its renewed motion for judgment as a matter of law that were not included in its Rule 50(a) motion. The court disagrees. At the close of the evidence, State Farm moved for judgment as a matter of law on the grounds that Virginia did not suffer a "bodily injury" as required by the policy and that the evidence was legally insufficient to support a claim for bystander damages. Those are the same grounds raised in the instant motion.

B.

The principal argument made by State Farm, and the one advanced throughout this litigation, is that the physical symptoms experienced by Virginia are not "bodily injuries" covered by the UIM provision of the insurance policy. The State Farm policy does not define "bodily injury." The court therefore looks to Texas law for guidance. In *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819 (Tex. 1997), the Texas Supreme Court held that the term "bodily injury," which was defined by the policy as "bodily harm, sickness or disease:"

> does not include purely emotional injuries . . . and unambiguously requires an injury to the physical structure of the human body. Our decision comports with the commonly understood meaning of "bodily," which implies a physical, and not purely mental, emotional, or spiritual harm. . . WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 245 (1966) also defines "bodily" as "having a body or a material form: physical, corporeal." Likewise, BLACK'S LAW DICTIONARY 175 (6th ed. 1990) defines "bodily" as "[p]ertaining to

> or concerning the body; of or belonging to the body or the physical constitution; not mental, but corporeal."

*Cowan*, 945 S.W.2d at 823. Thus, a purely emotional injury, unaccompanied by physical symptoms, does not qualify as a "bodily injury" in the insurance context. *Id.; see also Southern Farm Bureau Casualty Ins. Co. v. Franklin*, No. 07-05-0134-CV, 2006 WL 1373359 at *1 (Tex. App. -- Amarillo, May 19, 2006, writ denied) ("[T]he phrase 'bodily injury' appearing in an insurance policy does not encompass purely emotional injuries such as mental anguish, unless the policy states otherwise.").

However, the evidence in this case shows that Virginia suffered extreme emotional distress accompanied by a variety of physical symptoms, including headaches, migraines, stomachaches, nausea, and sleeplessness, as a result of witnessing the accident in question. The Texas Supreme Court has never decided whether physical manifestations of emotional distress constitute a "bodily injury" sufficient to trigger coverage under a standard insurance policy. *See Cowan*, 945 S.W.2d at 826 n.5 (expressly declining to consider whether "headaches, stomachaches, and sleeplessness, as proved at trial, would be a bodily injury sufficient to invoke Trinity's duty to indemnify"). Different panels of the same intermediate Texas appeals court have reached opposite conclusions. *Compare Ginn v. Texas Farmers Ins. Co.*, No. 3-96-0264-CV, 1998 WL 717120 at *5-6 (Tex. App. -- Austin 1998, no writ) (sleeplessness, nightmares, and nausea resulting from mental anguish were not "bodily injuries" covered by UIM policy) *with Trinity Universal Ins. Co. v. Cowan*, 906 S.W.2d 124, 130-31 (Tex. App. -- Austin 1995), *rev'd on other grounds*, 945 S.W.2d 819 (Tex. 1997) (headaches, stomachaches, and loss of sleep resulting from mental anguish were "bodily injuries" covered by standard Texas homeowners' policy). The court must therefore make an *Erie*-guess as to how the Texas Supreme Court would decide the question. *See American International Speciality Lines Ins. Co. v. Canal Indemnity Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

*Erie* requires that, in a diversity case, a federal court must follow state law on substantive matters not governed by the Constitution or federal law. *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 1851 (1996). The court need not be prescient. *Id.* Instead, "[w]hen confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue." *Id., quoting DeWeerth v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir.), *cert. denied*, 115 S.Ct. 512 (1994). "While decisions of intermediate state appellate courts provide guidance, they are not controlling." *United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565 (5th Cir. 2005). In making an *Erie*-guess, the court can consider, among other sources, "treatises, law review commentaries, decisions from other jurisdictions whose doctrinal approach is substantially the same, and 'the majority rule.'" *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 398 (5th Cir.), *cert. denied*, 106 S.Ct. 3339 (1986), *quoting* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507 at 100-03. It is not, however, the role of a federal court "to create or modify state law, rather only to predict it." *Batts*, 66 F.3d at 750.

1.

A logical starting point in predicting whether the Texas Supreme Court would interpret "bodily injury," as that term appears in the State Farm policy, to include physical manifestations of emotional distress is to survey the law in other jurisdictions. *See Hollins v. Rapid Transit Lines, Inc.*, 440 S.W.2d 57, 59 (Tex. 1969) ("It has been held by this Court that when we are called upon to decide a question of first impression in this state, we may look to other jurisdictions for guidance in reaching our decision on the question.").[4] The clear weight of authority holds that physical

---

[4] Indeed, the Texas Supreme Court in *Cowan* relied on cases from other jurisdictions in deciding that a pure emotional injury, unaccompanied by physical symptoms, does not constitute a "bodily injury" in the insurance context. *See Cowan*, 945 S.W.2d at 823-24 (citing cases from New Jersey, New Mexico, Montana, Virginia, California, Georgia, Michigan, and Washington).

symptoms of emotional distress constitute a "bodily injury" in the insurance context. *See, e.g. Hartman v. Estate of Miller*, 656 N.W.2d 676, 685 (N.D. 2003) (term "bodily injury," as used in PIP endorsement, includes PTSD accompanied by non-transitory physical manifestations); *Trinh v. Allstate Ins. Co.*, 109 Wash.App. 927, 936, 37 P.3d 1259, 1264 (2002), *review denied*, 147 Wash.2d 1003, 53 P.3d 1007 (2002) (physical manifestations of PTSD are "bodily injuries" covered by UIM provision of insurance policy); *Twin City Fire Ins. Co. v. Colonial Life & Accident Ins. Co.*, 124 F.Supp.2d 1243, 1247 (M.D. Ala. 2000) (emotional trauma can constitute "bodily injury" if accompanied by physical symptoms); *General Star Indemnity Co. v. Schools Excess Liability Fund*, 888 F.Supp. 1022, 1027 (N.D. Cal. 1995) (physical injury resulting from emotional distress constitutes "bodily injury"); *State Farm Fire & Casualty Co. v. Nikitow*, 924 P.2d 1084, 1089 (Colo. App. 1995) (although the term "bodily injury" in an insurance contract does not encompass pure emotional harm, coverage is available if the injury is accompanied by physical manifestations); *Garvis v. Employers Mutual Casualty Co.*, 497 N.W.2d 254, 257 (Minn. 1993) (emotional distress with appreciable physical manifestations can qualify as a "bodily injury" within the meaning of an insurance policy); *Voorhees v. Preferred Mutual Ins. Co.*, 128 N.J. 165, 179, 607 A.2d 1255, 1262 (1992) (emotional distress resulting in headaches, stomach pains, nausea, and body pains constituted "bodily injury" under homeowner's policy); *Western Casualty & Surety Co. v. Waisanen*, 653 F.Supp. 825, 832 (D.S.D. 1987) (emotional distress accompanied by high blood pressure was sufficient to establish physical harm); *Kufalk v. Hart*, 636 F.Supp. 309, 311-12 (N.D. Ill. 1986) (emotional distress resulting in high blood pressure, headaches, stomach pains, and diarrhea constituted "bodily injury" under general liability policy); *McGuire v. American States Ins. Co.*, 491 So.2d 606, 608 (Fla. Dist. Ct. App. 1986) (mental distress accompanied by headaches and muscle

spasms, requiring treatment and medication, could be construed as "bodily injury" under insurance policy); *Holcomb v. Kincaid*, 406 So.2d 646, 649 (La. Ct. App. 1981) (emotional distress resulting in rash, hair loss, weight loss, and symptoms of stroke fell within definition of "bodily injury" in homeowner's policy). *But see State Farm Mutual Auto. Ins. Co. v. D.L.B. ex rel. Brake*, 881 N.E.2d 665, 666 (Ind. 2008) (emotional distress accompanied by physical manifestations was not "bodily injury" within the meaning of an automobile insurance policy); *Dahlke v. State Farm Mutual Auto. Ins. Co.*, 451 N.W.2d 813, 815 (Iowa 1990) ("bodily injury" does not include physical manifestations of emotional distress); *Zerr v. Erie Ins. Exchange*, 446 Pa.Super. 451, 457, 667 A.2d 237, 240 (1995), *appeal denied*, 544 Pa. 613, 674 A.2d 1075 (1996) (term "bodily injury" in an insurance policy does not include mental illness manifested by physical symptoms).

Even jurisdictions that deny "bodily injury" coverage for pure emotional injuries have suggested that coverage may exist if the emotional harm is accompanied by physical symptoms. *See, e.g. Economy Preferred Ins. Co. v. Jia*, 135 N.M. 706, 709-10, 92 P.3d 1280, 1283-84 (2004); *Aim Ins. Co. v. Culcasi*, 229 Cal.App.3d 209, 222, 280 Cal.Rptr. 766, 773-74 (1991); *Greenman v. Michigan Mutual Ins. Co.*, 173 Mich.App. 88, 92, 433 N.W.2d 346, 349 (1988); *Albin v. State Farm Mutual Auto. Ins. Co.*, 498 So.2d 171, 174 (La. Ct. App.), *writ denied*, 498 So.2d 1088 (1986); *Artcraft of New Hampshire, Inc. v. Lumberman's Mutual Casualty Co.*, 126 N.H. 844, 846, 497 A.2d 1195, 1196 (1985); *Farm Bureau Mutual Ins. Co. v. Hoag*, 136 Mich.App. 326, 335, 356 N.W.2d 630, 633 (1984). *See also* K. Kolb, *General Liability Coverage for Claims of Emotional Distress: An Insurance Nightmare*, 45 DRAKE L.REV. 981, 993-94 (1997) (collecting cases).

Of all the cases addressing this issue, two are particularly instructive. In *Trinh*, the plaintiff sought UIM benefits from her insurance company for damages related to post-traumatic stress disorder ("PTSD"). According to the evidence, plaintiff called a friend for assistance after she got

a flat tire while driving on a busy highway. The friend arrived and began changing the tire when he was struck and killed by a drunk driver. Although plaintiff was standing next to her friend at the time, she was not hit by the car and did not immediately seek medical treatment. Following the accident, plaintiff experienced frequent headaches, stomach pains, hair loss, fragile fingernails, and muscle aches. Her physical symptoms were accompanied by feelings of depression and anxiety, nightmares, insomnia, and chronic crying. A psychologist diagnosed plaintiff with PTSD "that was entirely and solely related" to witnessing the accident. In reversing a summary judgment in favor of the insurance company, the Washington court of appeals held that the term "bodily injury," as defined by the policy, was unambiguous and included emotional injuries that are accompanied by physical manifestations. The court wrote:

> We find it significant that Allstate's policy in this case defines "bodily injury" to mean "sickness" or "disease." Physically-manifested PTSD clearly and unambiguously falls within these broad terms . . . An insurance purchaser would reasonably interpret the term "bodily injury" to include physically-manifested emotional distress, and we hold that where there are physical manifestations of PTSD, it qualifies as a "bodily injury" under a UIM policy like Trinh's.

*Trinh*, 37 P.3d at 1264.

A similar result was reached by the New Jersey Supreme Court in *Voorhees*. In that case, a school teacher sued plaintiff and other parents who made derogatory comments about her competency and fitness. The complaint filed by the teacher in the underlying action alleged that the false statements made by plaintiff caused her "severe humiliation, embarrassment, emotional distress, and mental anguish." Evidence provided during discovery revealed that the teacher also experienced a variety of physical symptoms related to her emotional distress, including headaches, stomach pains, nausea, and body pains. At the time of the lawsuit, plaintiff was insured under a homeowner's policy that obligated the insurer to pay "all sums for which any insured is legally liable

because of bodily injury[.]" The policy defined "bodily injury" as "bodily harm, sickness, or disease to a person including required care, loss of services and death resulting therefrom." When plaintiff asked her insurance carrier to defend the teacher's lawsuit, the carrier refused. Plaintiff then sued for breach of the insurance agreement. One of the issues raised on appeal was whether a claim for emotional distress resulting in physical consequences is covered under a bodily injury insurance policy. The *Voorhees* court reached the same conclusion as the *Trinh* court, albeit for different reasons. Whereas *Trinh* holds that an emotional injury accompanied by physical manifestations unambiguously falls within the broad definition of "bodily injury," when defined to mean "sickness" or "disease," the *Voorhees* court concluded that:

> the term "bodily injury" is ambiguous as it relates to emotional distress accompanied by physical manifestations. That ambiguity should be resolved in favor of the insured. Moreover, we find such an interpretation to be in accord with the insured's objectively-reasonable expectations. That emotional distress can and often does have a direct effect on other bodily functions is well recognized. An insured who is sued on account of an injury involving physical symptoms could reasonably expect an insurance policy for liability for bodily injuries to provide coverage.

*Voorhees*, 607 A.2d at 1261 (internal citations and quotations omitted).

State Farm ignores *Trinh*, *Voorhees*, and the other cases holding that physical manifestations of emotional distress constitute "bodily injury" in the insurance context. Instead, State Farm focuses on *Ginn*, an unpublished panel decision from an intermediate Texas appeals court. In that case, the plaintiff was sitting in her living room watching television when she heard a collision outside the house. After being told by her husband that their 16 year-old son was seriously hurt in the wreck, plaintiff rushed to scene. She comforted her injured son, who had blood running down his face, deep cuts on his neck, and a bone protruding from his broken leg, for 20 or 30 minutes until an ambulance arrived. Following the accident, plaintiff could not sleep, experienced horrible nightmares, and

became sick after she ate. On these facts, the Texas appeals court held that plaintiff was not entitled to recover UIM benefits for injuries she suffered as a bystander. According to the court:

> Here, the evidence showed that [plaintiff] suffered mental anguish, which is understandable, but she suffered no physical injury. [Plaintiff] testified that after the accident she could not sleep or eat, that she had horrible nightmares, and that she was sick after she ate. She stated that she did not seek psychological or psychiatric counseling for her emotional trauma. [Plaintiff] further testified that she had not been to doctors, incurred medical bills, or been prescribed medication for any condition resulting from the accident. Without evidence of a physical harm to her, [plaintiff] was not entitled to recover [UIM benefits] for any bystander cause of action.

*Ginn*, 1998 WL 717120 at *6.

Notwithstanding any superficial similarities between *Ginn* and the instant case, there are two significant differences. First, the symptoms experienced by the plaintiff in *Ginn*--sleeplessness, loss of appetite, and nightmares--lack any distinct physical component. *See, e.g. Era Franchise Systems, Inc. v. Northern Ins. Co. of New York*, 208 F.3d 225, 2000 WL 192834 at *6 (10th Cir. Feb. 17, 2000) ("Although sleeplessness may affect the body, it is usually considered an aspect of mental suffering. It is not ordinarily considered a physical injury to the body or a sickness of the body."); *SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 201-02, 607 A.2d 1266, 1273 (1992) (same). By contrast, the jury in this case implicitly found that Virginia Haralson suffered physical symptoms in the form of headaches, migraines, stomachaches, and nausea. Second, the *Ginn* court provided little analysis and no authority for its conclusion that sleeplessness, nightmares, and becoming sick after eating are not physical injuries. Indeed, just three years earlier, a different panel of the same appeals court held that headaches, stomachaches, and loss of sleep were "bodily

injuries" covered by a standard Texas homeowner's policy. *See Cowan*, 906 S.W.2d at 130-31.[5] Because of these important distinctions, and the fact that *Ginn* is an unpublished opinion from an intermediate appeals court, it is of little value to this court in making an *Erie*-guess. *See* TEX. R. APP. P. 47.7 (opinions not designated for publication by the court of appeals have no precedential value).

2.

In light of the overwhelming number of well-reasoned decisions from other jurisdictions holding that physical manifestations of emotional distress constitute a "bodily injury" in the insurance context, the court predicts that the Texas Supreme Court would reach the same conclusion if presented with the facts of this case. The headaches, migraines, stomachaches, and nausea experienced by Virginia have a distinct physical component, separate and apart from pure emotional distress. Moreover, the State Farm policy does not define "bodily injury." Although the failure to define a term in an insurance policy does not render that term ambiguous if it still can be given a certain, definite meaning, *see United Services Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 779 (Tex. App.--San Antonio 1991, writ denied), the combination of the lack of a definition and the hybrid nature of the injury suffered by Virginia--i.e, extreme emotional distress accompanied by physical symptoms--renders the term "bodily injury" ambiguous *in this case*. Where a policy provision is vague or ambiguous, and is subject to two or more reasonable interpretations, the court must adopt a construction which affords coverage. *See Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). It was reasonable for the jury to determine, based on the language of the policy and

---

[5] The court recognizes that the panel decision in *Cowan* was reversed by Texas Supreme Court. However, the issue in that case was whether the pleadings were sufficient to trigger a duty to defend. Because the plaintiff failed to plead any physical manifestations of her alleged mental injuries, the state supreme court held that she did not plead a "bodily injury," as that term was defined in the policy. *See Cowan*, 945 S.W.2d at 826. The court expressly declined to decide "whether Cowan's headaches, stomachaches, and sleeplessness, as proved at trial, would be a bodily injury sufficient to invoke Trinity's duty to indemnify." *Id.* at 826 n.5.

the evidence presented at trial, that Virginia sustained a "bodily injury" as a result of witnessing the automobile accident in question.

C.

State Farm also challenges the sufficiency of the evidence to support a claim for bystander damages. Under Texas law, the elements of a bystander claim are:

> (1) The plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;
>
> (2) The plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
>
> (3) The plaintiff and the victim were closely related, as contrasted with the absence of any relationship or the presence of only a distant relationship.

*United Services Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998). Virginia testified that she was traveling in a vehicle directly behind the car driven by Fred Haralson and saw the violent collision made the basis of this suit. Moments after the crash, Virginia rushed to her husband as he lay injured and trapped inside his car. She believed that Fred had been killed. As a direct and proximate result of witnessing the accident and her seriously injured husband, Virginia suffered extreme emotional distress manifested by physical symptoms, including headaches, migraines, stomachaches, nausea, and sleeplessness. (*See* Def. Mot. at 4; Plf. Resp. at 1-2).

State Farm posits that Virginia's physical symptoms were the result of seeing her husband in the hospital after the accident--not from her contemporaneous observance of the accident. At the conclusion of the trial, the jury was instructed that "[d]amages in this case are limited to the bodily injuries suffered by Virginia Haralson *as a result of a direct emotional impact from her sensory and*

*contemporaneous observance of the accident in question."* (*See* Jury Chrg. at 8) (emphasis added).

The court defined "bodily injury" as:

> an injury to the physical structure of the human body. Purely mental, emotional, or spiritual injuries, unaccompanied by any physical manifestations of harm, are not "bodily injuries." However, physical illness resulting from mental anguish or emotional distress may be a "bodily injury."

(*Id.* at 7). Relying on these instructions, the jury found that Virginia sustained a "bodily injury" as a result of witnessing the automobile accident and awarded her $25,000 in compensatory damages. (*Id.* at 8-9). The evidence adduced at trial was more than sufficient to support the verdict. *See Pulte Home Corp. v. Brown*, No. 01-89-00087-CV, 1991 WL 23620 at *5 (Tex. App.--Houston [1st Dist.], Feb. 14, 1991, writ dism'd) (plaintiff's testimony, standing alone, held sufficient to support award of mental anguish damages); *Kneip v. Unitedbank-Victoria*, 734 S.W.2d 130, 134-36 (Tex. App.--Corpus Christi 1987, no writ) (same).

D.

The court reaches a different conclusion with respect to the jury award for loss of consortium and loss of household services.[6] It is well-settled that loss of consortium is not a "bodily injury" as that term is used in the insurance context. *See McGovern v. Williams*, 741 S.W.2d 373, 374-75 (Tex. 1987); *Carter v. State Farm Mutual Auto Ins. Co.*, 33 S.W.3d 369, 372 (Tex. App.--Fort Worth 2000, no writ). Rather, loss of consortium, which involves harm to "the intangible and sentimental elements" of a marriage, is a derivative claim that arises solely as a consequence of injuries to a spouse. *McGovern*, 741 S.W.2d at 374, *citing Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex.

---

[6] Virginia argues that State Farm waived this claim by failing to object to the jury charge as required by Fed. R. Civ. P. 51(c). However, that rule applies only to defective jury instructions. Here, State Farm does not challenge the instructions on loss of consortium and loss of household services damages. Rather, the issue raised post-trial is whether such damages constitute "bodily injuries" under the State Farm policy.

1978). The same is true for loss of household services. *See Rosenzweig v. Dallas Area Rapid Transit*, 841 S.W.2d 897, 898 (Tex. App.--Dallas 1992, writ denied); *Dougherty v. Gifford*, 826 S.W.2d 668, 681 (Tex. App.--Texarkana 1992, no writ). The court therefore sets aside the jury verdict awarding Virginia $15,000 for loss of consortium and $1,000 for loss of household services.

E.

Finally, State Farm contends that the amount of any recovery should be offset by $20,000-- the amount payable to Virginia by other sources. Under the State Farm policy:

> Subject to this [UIM] maximum, our limit of liability will be the lesser of:
>
> a. The difference between the amount of a covered person's damages for bodily injury or property damage and the amount paid or payable to that covered person for such damages, by or on behalf of persons or organizations who may be legally responsible; and
>
> b. The applicable limit of liability for this coverage.

(Def. Mot. App. at 29). In this case, the underinsured driver, Carmen Andrade-Silva, had liability coverage in the amount of $20,048 per person or $40,048 per incident. (*See* Jt. PTO at 11, ¶ 10). Fred Haralson settled his liability claim for the per person policy limit of $20,048. (*Id.* at 11, ¶ 12). Virginia and her daughter, Christina, jointly settled their claims for $18,000, or $2,000 less than the remaining available proceeds. (*Id.*).

Virginia argues that State Farm, at most, is entitled to an offset for only a portion of the $18,000 paid to her and Christina. However, the UIM policy plainly states that liability is limited to the difference between the amount of damages for bodily injury and "the amount paid *or payable* to [the] covered person for such damages, by or on behalf of persons or organizations who may be legally responsible." (Def. Mot. App. at 29) (emphasis added). Under Texas law, an injured party

bears responsibility for the consequences of settling a claim for less than the full amount of the tortfeasor's liability coverage. *See State Farm Mutual Auto. Ins. Co. v. Norris*, 216 S.W.3d 819, 822 (Tex. 2006); *Olivas v. State Farm Mutual Auto. Ins. Co.*, 850 S.W.2d 564, 565-66 (Tex. App. -- El Paso 1993, writ denied). Where, as here, an injured party settles a liability claim against an underinsured motorist for less than the policy limits, the UIM carrier is entitled to an offset for the full amount of liability coverage available. *See Allstate Indemnity Co. v. Collier*, 983 S.W.2d 342, 344 (Tex. App. -- Waco 1998, writ dism'd) (UIM carrier entitled to $100,000 offset, the full amount of coverage available under tortfeasor's liability policy, even though injured party settled with tortfeasor for only $75,000); *Olivas*, 850 S.W.2d at 565-66 (UIM carrier entitled to offset equal to $25,000 policy limit where insured settled with tortfeasor for $15,000).

The jury awarded $25,000 to Virginia as compensation for her bodily injuries. After Fred Haralson settled his claim against the underinsured driver, $20,000 remained available, or "payable," to settle Virginia's liability claim. Therefore, State Farm is entitled to a $20,000 offset against the amount of damages found by the jury.

## CONCLUSION

State Farm's renewed motion for judgment as a matter of law or, in the alternative, motion for judgment [Doc. #123] is granted in part and denied in part. The court sets aside the jury verdict awarding Virginia Haralson $15,000 for loss of consortium and $1,000 for loss of household services. State Farm also is entitled to a $20,000 offset against the $25,000 in bodily injury damages found by the jury. In all other respects, the jury verdict stands.

SO ORDERED.

DATED: July 8, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE