IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRED HARALSON, ET AL. | § § § | |
| Plaintiffs, | § § | NO. 3-05-CV-2513-BD |
| VS. | § § | (Consolidated With |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | § § § § | No. 3-06-CV-1075-BD) |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed separate motions for summary judgment with respect to the contract and extracontractual claims of Virginia Haralson and Fred Haralson in this civil action seeking underinsured motorist ("UIM") benefits under a standard Texas personal automobile policy. For the reasons stated herein, defendant is entitled to summary judgment as to Virginia's claims, but not as to Fred's claims.

I.

On March 6, 2005, Fred Haralson sustained serious bodily injuries when the car he was driving collided with a vehicle that ran a red light. (*See* Plf. MSJ Resp. App. at 129). His wife, Virginia, and daughter, Christina, were following behind in another car and witnessed the collision. (*Id.* at 144, ¶ 4). Following the accident, the Haralsons filed a third-party liability claim against the driver of the other car, Carmen Andrade-Silva, who had coverage in the amount of $20,048 per person or $40,048 per incident. (*See* Jt. PTO at 11, ¶ 10). Fred accepted the per person policy limit of $20,048. (*Id.* at 11, ¶ 12). Virginia and Christina jointly settled their claims against Andrade-Silva for $18,000. (*Id.*). Fred and Virginia then filed separate claims for UIM benefits under their

State Farm personal automobile policy, which pays:

> [D]amages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person . . . caused by an accident.

(Plf. MSJ Resp. App. at 187). It is undisputed that the State Farm policy provides UIM coverage in the amount of $50,000 per person or $100,000 per accident, and that the Haralsons are "covered persons" under the policy. (*See* Jt. PTO at 10-11, ¶¶ 1, 2 & 13).

On April 4, 2005, State Farm tendered a $50,000 check payable to "Robert Fred Haralson & Virginia Haralson, Individually and as Husband and Wife & Law Offices of Van Shaw, Their Attorney." (Plf. MSJ Resp. App. at 110). The next day, the Haralsons, through their attorney, rejected the check because it purported to settle the claims of both Fred and Virginia. (*Id.* at 103). Van Shaw, counsel for the Haralsons, pointed out that his clients were making separate UIM claims, each seeking the $50,000 policy limits. (*Id.*). In response to this demand, State Farm notified Shaw that "Mrs. Haralson's claim, if any, would be considered a derivative claim of Mr. Haralson's claim for underinsured injury benefits under the same $50,000 per person limit of coverage. The most we can pay is $50,000 which was previously sent to you." (*Id.* at 101). On April 14, 2005, Shaw told State Farm that including Virginia as a payee on Fred's settlement draft was "not proper or acceptable," and reiterated that the Haralsons were making separate UIM claims. (*Id.* at 99). State Farm adhered to its position that Virginia's claim was derivative of Fred's claim and, therefore, subject to the same $50,000 UIM limit. (*Id.* at 98). Unable to resolve this dispute through negotiation, the Haralsons filed separate lawsuits against State Farm in state district court. State Farm timely removed both cases to federal court,[1] where they were consolidated into one action. On

---

[1] Federal subject matter jurisdiction is proper because the Haralsons and State Farm are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

January 31, 2006, five weeks after Fred filed his lawsuit, State Farm reissued a $50,000 settlement draft payable to "Robert Fred Haralson & Law Offices of Van Shaw, His Attorney." (*Id.* at 198). Fred refused to accept the check without explanation. (*See id.* at 196-97).

After the parties conducted discovery and the court denied summary judgment, the underlying UIM claim proceeded to trial on the issues of liability and damages. Prior to trial, State Farm stipulated that the underinsured driver, Andrade-Silva, was liable for the accident and that Fred incurred medical expenses in excess of $100,000. (*See* Jt. PTO at 11, ¶¶ 8-9). A jury found that Virginia sustained a "bodily injury" as a result of witnessing the automobile accident and awarded her $25,000 in compensatory damages, $15,000 for loss of consortium, and $1,000 for loss of household services. In an order dated July 8, 2008, the court set aside the damages for loss of consortium and loss of household services, upheld the $25,000 compensatory damage award, but offset the amount of compensatory damages by $20,000--the coverage available to Virginia under the tortfeasor's liability policy. *See Haralson v. State Farm Mut. Auto. Ins. Co.*, 564 F.Supp.2d 616, 626-27 (N.D. Tex. 2008). Over the next 60 days, State Farm tendered Virginia a series of checks totaling $7,809.66 in satisfaction of the $5,000 in damages determined by the court, together with prejudgment interest, postjudgment interest, and court costs. (*See* Def. MSJ-I App. at 1-3, 18-19; Def. MSJ Supp. App. at 34). It is not clear whether Virginia, who disputes the $20,000 offset and State Farm's interest calculations, has negotiated any of the checks. (Def. MSJ Supp. App. at 34, 38-39).

State Farm now moves for summary judgment with respect to the Haralsons' claims for breach of contract and violations of the Texas Insurance Code. The issues have been fully briefed by the parties and this matter is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Where, as here, the summary judgment movant does not have the burden of proof at trial, the movant must point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

III.

In their most recent pleadings, the Haralsons assert claims for breach of contract and violations of the Texas Insurance Code. (*See* F. Haralson Third Am. Comp. at 3, ¶¶ 4.1-4.2; V. Haralson Sec. Am. Compl. at 2-3, ¶¶ 4.1-4.2). Under the State Farm policy:

> If we notify you that we will pay your claim, or part of your claim, we must pay within 5 *business days* after we notify you.

(Def. MSJ-II App. at 8, ¶ 2.G.1) (emphasis in original). Section 541.003 of the Texas Insurance Code provides:

> A person may not engage in this state in a trade practice that is defined in this chapter as or determined under this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

TEX. INS. CODE ANN. § 541.003 (Vernon 2008). One of the unfair or deceptive insurance practices prohibited by the statute is "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." *Id.* § 541.060(a)(2)(A). Another provision of the Texas Insurance Code subjects an insurer to statutory damages if it fails to pay a claim within 60 days of receiving all required information from the insured. *See id.* § 542.058(a). According to the Haralsons, State Farm breached the insurance contract and violated state law by failing to pay each of them the $50,000 UIM policy limits in a timely manner.

A.

State Farm maintains that Virginia Haralson is not entitled to recover on her contract and extracontractual claims because she was paid in full within 60 days after the court established the amount of her bodily injury damages. Under Texas law, a "UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006). In this case, liability and damages were not established until July 8, 2008, when the court upheld the jury's finding that Virginia sustained a "bodily injury" as a result of witnessing the automobile accident involving her husband, but offset the $25,000 compensatory damage award by $20,000-- the amount of coverage available to Virginia under the tortfeasor's liability policy. On August 7, 2008, State Farm tendered a check to Virginia and her attorney in the amount of $6,409.87, which represents the $5,000 in damages allowed by the court, $695.21 in prejudgment interest, $9.66 in postjudgment interest, and $705.00 in taxable court costs. (*See* Def. MSJ-I App. at 1-3).[2] As a result

---

[2] The record shows that State Farm would have tendered payment earlier, but Virginia's attorney was on vacation and did not return to the office until August 4, 2008. (*See* Def. MSJ-I App. at 4-9).

of further discussions between the attorneys, State Farm issued two additional checks--one for $1,310.00 on August 18, 2008 and one for $89.79 on September 8, 2008--to cover disputed cost items and prejudgment interest. (*See id.* at 18-19; Def. MSJ Supp. App. at 34). Although Virginia continues to dispute State Farm's interest calculations, she acknowledges being paid $7,809.66 on her UIM claim. (*See* Def. Mot. for Leave to File Supp. App. at 5).

In an attempt to create a fact issue for trial, Virginia asks the court to revisit its decision allowing State Farm a full $20,000 offset against the $25,000 in compensatory damages found by the jury.[3] According to Virginia, one-half of the proceeds under the tortfeasor's liability policy were available to her minor daughter, Christina, to whom Virginia owed a fiduciary duty. Virginia therefore believes that the court should have offset the $25,000 compensatory damage award by $10,000, which would require State Farm to pay $15,000 in damages and interest thereon. (*See* Plf. MSJ Resp. at 20-23). Even if the court was inclined to reconsider its decision, Virginia still has not adduced any evidence showing how much, if any, of the settlement with Andrade-Silva went to Christina.[4] Without such evidence, there is no way to apportion the offset. Moreover, State Farm was entitled to rely on the court's determination of damages, even if erroneous, in calculating prejudgment interest.

---

[3] To the extent Virginia attempts to raise new theories of liability for the first time in her summary judgment response, such as State Farm's failure to investigate her bystander claim (*see* Plf. MSJ Resp. at 17), the court declines to consider those arguments. See *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Davis v. Wal-Mart Stores, Inc.*, No. 3-05-CV-1805-L, 2007 WL 836860 at *12 (N.D. Tex. Mar. 19, 2007) (rejecting attempt to raise new theory of liability in response to motion for summary judgment).

[4] Although Virginia alleges that 50% of the settlement proceeds were "set aside" for her minor daughter, (*see* Plf. MSJ Resp. Sec. App. at 2, ¶ 7), nothing in the settlement agreement with Andrade-Silva supports that claim. (*See id.*, Exh. A). Instead, the settlement agreement indicates that Virginia, individually and as next friend of her daughter, jointly settled the two liability claims for the aggregate sum of $18,000. (*Id.*, Exh. A at 2).

State Farm properly deducted the $20,000 offset allowed by the court from the $25,000 compensatory damage award before calculating prejudgment interest. *See Pringle v. Moon*, 158 S.W.3d 607, 611 (Tex. App.--Fort Worth 2005, no writ) (credit or offset should be applied from the total damages awarded before prejudgment interest is calculated); *Mullins v. TestAmerica, Inc.*, No. 3-02-CV-0106-K, 2008 WL 4526182 at *3 (N.D. Tex. Oct. 8, 2008) (same). The uncontroverted summary judgment evidence establishes that State Farm tendered all sums due and payable to Virginia--including prejudgment interest, postjudgment interest, and court costs--within 60 days of the court's decision modifying the damage award. On these facts, there can be no liability for breach of contract or violations of the Texas Insurance Code. *See Wellisch v. United Services Automobile Ass'n*, 75 S.W.3d 53, 57 (Tex. App.-- San Antonio 2002, writ denied) (insurer may wait for a judicial determination of an insured's legal entitlement to benefits before making payment without breaching the insurance contract or violating the Texas Insurance Code).

B.

The court reaches a different conclusion with respect to the claims of Fred Haralson. Unlike Virginia's claim for bodily injuries sustained as a result of witnessing the automobile accident, State Farm never disputed that Fred sustained bodily injuries in excess of the $50,000 UIM policy limit. Nor is there any dispute that Fred was legally entitled to recover those damages from the owner or operator of an underinsured motor vehicle. (*See* Jt. PTO at 11, ¶ 8-9). Yet State Farm waited until January 31, 2006--more than 10 months after the accident--to issue a settlement draft to Fred and his attorney for the $50,000 policy limits. Prior to that time, State Farm insisted on including Virginia as a payee on the check, despite repeated letters from opposing counsel notifying the adjuster that Fred and Virginia were making separate claims for UIM benefits. (*See* Plf. MSJ Resp. App. at 98, 99, 101, 103). At least two Texas courts have held that including the spouse of a settling party as

a payee on a settlement draft raises a fact issue as to whether the parties intended to settle the spouse's separate claim. *See, e.g. French v. Henson*, No. 05-06-01036-CV, 2008 WL 2266119 at *1 (Tex. App.--Dallas, Jun. 4, 2008, no pet.); *Harris v. Balderas*, 27 S.W.3d 71, 78 (Tex. App.--San Antonio 2000, writ denied). If Fred is able to convince a jury that State Farm improperly conditioned the payment of his UIM claim on the release of Virginia's claim for bodily injury damages, State Farm may be liable for breach of contract and delay damages under the Texas Insurance Code. *See Keeling v. State Farm Lloyds*, No. 3-01-CV-1285-BD, 2002 WL 31230804 at *4 (N.D. Tex. Sept. 30, 2002).

State Farm also seeks summary judgment on the ground that Fred has failed to adduce any evidence of actual damages. However, under Texas law, the failure to prove actual damages stemming from a breach of contract does not defeat recovery on a contract theory. *See Fisher v. Westinghouse Credit Corp.*, 760 S.W.2d 802, 808 (Tex. App.--Dallas 1988, no writ). Instead, the court may award nominal damages upon proof that the contract was breached. *Id.* Fred may also recover statutory damages, in the form of interest on the amount of his claim at the rate of 18% per annum, and reasonable attorney's fees, if State Farm delayed payment of the claim for more than 60 days. *See* TEX. INS. CODE ANN. §§ 542.058(a) & 542.060(a). For these reasons, summary judgment is not proper.

## **CONCLUSION**

Defendant's motion for summary judgment as to the claims asserted by Virginia Haralson [Doc. #133] is granted. Those claims will be dismissed with prejudice by separate judgment filed today. Defendant's motion for summary judgment as to the claims asserted by Fred Haralson [Doc. #134] is denied. Those claims will proceed to trial on December 15, 2008.

SO ORDERED.

DATED: November 5, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE